Lillian M. Shenk, Administratrix of Estate of Roy L. Shenk, Deceased, and Caroline Masimer, Administratrix of Estate of William C. Masimer, Deceased, Appellees, v. Henry A. Scandrett et al., Trustees, Appellants.

Gen. No. 41,990.

Heard in the third division of this court for the first district at the October term, 1941. ▮ Opinion filed May 27, 1942.

CARSON L. TAYLOR and EDWIN R. ECKERSALL, both of Chicago, for appellants; M. L. BLUHM, of Chicago, of counsel.

ROYAL W. IRWIN, of Chicago, for appellees.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

Lillian M. Shenk, administratrix of the estate of Roy L. Shenk, deceased, and Caroline Masimer, administratrix of the estate of William C. Masimer, deceased, filed their complaint in the circuit court of Cook county, alleging that the defendants, common carriers in interstate commerce, had possession and control of and maintained a bridge, or viaduct, in Route No. 45, otherwise known as Mannheim Road, over and across certain tracks of the defendants at the Village of Franklin Park; that on October 19, 1937, plaintiff's intestate Roy L. Shenk was the owner of and driving an automobile in which plaintiff's intestate William C. Masimer was a passenger; that said automobile skidded and plunged through the guard rail of said bridge and fell to the railroad tracks below, resulting in the death of both of said intestates. The charges of negligence are: (a) that defendants carelessly and negligently kept, furnished and provided the surface of the incline approaches to said viaduct in a wet, slippery and skiddy condition; (b) that defendants carelessly and negligently constructed and maintained the surface of said incline approaches of wooden planks laid diagonally in the surface of said roadway; (c) that defendants carelessly and negligently failed to cause the surface of the planks in the roadway on

said incline approaches to be covered with gravel, asphaltum, cinders or other substances to prevent the same from becoming skiddy and slippery when wet; (d) that defendants carelessly and negligently failed to prevent traffic from passing over said incline approaches when the same were wet, slippery, skiddy and dangerous; (e) that defendants carelessly and negligently failed to give suitable, sufficient and proper notice, signal and warning that the surfaces of said incline approaches were wet, slippery, skiddy and dangerous; and (f) that defendants failed to comply with a certain ordinance of the Village of Franklin Park, Illinois, whereby the defendants agreed to construct and maintain said incline approaches to said viaduct in suitable, safe and proper condition. Defendants answered and traversed each allegation of negligence charged in the complaint. They also denied that the accident was the proximate result of any negligence on their part, denied that decedents were in the exercise of ordinary care for their own safety, and alleged that the sole cause of the accident was the negligence of Roy L. Shenk, with or without the contributory negligence of William C. Masimer. A trial before the court and a jury resulted in separate verdicts of $10,000 each in favor of plaintiffs. Separate judgments were entered on the verdicts, to be paid in due course of administration of defendants' trusteeship proceedings in the Federal Court. Defendants' motions for judgment *non obstante veredicto,* for a new trial and in arrest of judgment were overruled. This appeal followed.

Plaintiffs' theory is that the defendants maintained the surface of the viaduct in an extremely dangerous condition for a long period of time; that defendants, under their contract with the Village, agreed to construct and maintain the viaduct; that defendants' duty to maintain the viaduct was the same duty that rested upon the Village; that a portion of the approach to the

viaduct consisted of planks, which when wet were notoriously slippery; that it was an unusual situation; that planking is not commonly used in surfacing roadways in this part of the country; that in fact one would have difficulty in finding a roadway surfaced with planks on any road, bridge or viaduct in this locality; that the decedents were residents of Pennsylvania and at the time of the occurrence were passing through this locality on their way to Wisconsin; that they were wholly unfamiliar with the situation; that they were suddenly confronted with a danger of which they had no notice, and that as they were confronted with the dangerous situation, they were in the exercise of due care for their own safety. Defendants' theory is that they exercised ordinary care in the construction and maintenance of the bridge; that the slippery condition of the bridge was due to rainy weather, over which defendants had no control; that there were adequate warning signs placed on the highway and bridge, advising of its slippery condition when wet; that plaintiffs' intestates were guilty of contributory negligence in driving their automobile at a high and dangerous rate of speed while approaching and while on the bridge.

There is no substantial dispute as to the facts of the case. The defendants and their predecessors constructed and maintained a bridge constituting a link in what is known as Mannheim Road, Route 45, this bridge passing over the tracks and yards of the defendants in Franklin Park, Illinois, one of the western suburbs of Chicago. Mannheim Road and the bridge extend in a northerly and southerly direction. Mannheim Road is a well-paved concrete highway and is 40 feet wide south of the point where it joins the bridge. At a point about 500 feet south of the approach to the bridge, the roadway narrowed down to a two lane highway. The roadway then proceeded almost directly north to the first approach of

the viaduct. The elevation of the roadway at the south end of the approach was paved with concrete for a distance of 191 feet. The roadway of the approach to the top of the viaduct was paved with wooden planks, and it was on these planks that the accident occurred. The viaduct lies entirely within the Village. On July 17, 1913, the Village and the defendants' predecessors entered into a contract ordinance to erect and maintain the viaduct in Mannheim Road across the tracks of the defendants. No question was raised as to the responsibility of the defendants for the maintenance of the viaduct. The bridge was constructed substantially in accordance with the terms of the ordinance. The bridge floor was renewed in January, 1937, at which time a new timber wearing surface was laid. The timbers in the roadway of the bridge were laid diagonally and measured 4 inches by 12 inches. The roadway of the bridge was 20 feet wide. Beginning at the point where it adjoins the concrete highway, the roadway ascended to the north at a 5 per cent grade for a distance of 427.7 feet, at which point it leveled off to cross the tracks and then descended to the north, returning to the concrete pavement of Mannheim Road. There was a sidewalk on the west side of the bridge. There was no sidewalk on the east side. The sidewalk from the face of the curb, or from the west edge of the roadway to the extreme west edge of the planking and sidewalk was 6 feet 3 inches wide. The level of the sidewalk proper was 10 inches higher than the roadway, and on top of the sidewalk was a 3 inch piece, which acted as a curb, thereby making the curb adjoining the roadway and the sidewalk 13 inches higher than the roadway. On the west side of the sidewalk was a three pipe horizontal railing, with stanchions or supports at 8 foot intervals. There was a curb on the east side of the roadway similar to that on the west side. The curb on the east side was 12 inches high at some places and 13 inches high at others. To the east of the curb

on the east side of the roadway was a handrail similar to that adjoining the sidewalk on the west side. The timbers constituting the curbs and the handrail stanchoins were bolted to the surface of the bridge. Approaching the bridge from the south there was a "slow" sign on the east side of Mannheim Road at a point 1177.7 feet south of the juncture of the concrete highway and the plank roadway of the bridge. There was a "Narrow Pavement" sign on the east side of Mannheim Road at a point 894 feet south of the juncture of the concrete and the planking of the bridge. At a point 695.5 feet south of the juncture of the concrete highway and the plank roadway of the bridge, the concrete pavement begins to narrow, narrowing from 40 feet at that point to 20 feet at the point where the concrete joins the plank roadway of the bridge. There was a "Slippery When Wet" sign at the foot of the approach to the bridge. It rained during the night of Monday, October 18, 1937, and the early morning of Tuesday, October 19, 1937. The planks in the surface of the driveway of the bridge were thoroughly wetted, which made them very slippery. It had been raining continuously from 10 or 11 o'clock the evening of Monday, October 18th, and when the accident occurred it was still drizzling. It had also rained on the preceding Sunday.

Roy L. Shenk and William C. Masimer lived in Hershey, Pennsylvania. They left Hershey in Shenk's new autombile at about 3 o'clock on the morning of Monday, October 18th, with the intention of driving to Wisconsin to buy cattle. At about 6:40 on the morning of Tuesday, October 19th, Shenk, accompanied by Masimer, drove his automobile in a northerly direction on Mannheim Road at a speed of about 45 miles per hourt. Visibility was good for a distance of 400 feet, according to the testimony of one of plaintiff's witnesses, and for 500 feet according to the testimony of another of plaintiffs' witnesses. The sky was over-

cast. When the car entered the bridge it had to make a turn of probably 10 or 15 feet to the left. The occupants of the car were observing the roadway because the car proceeded from the four lane highway into the two lane highway and went up the approach to the viaduct on the right hand side. When the car got on the wet, wooden planking, it started to skid, and at a point 200 feet north of the juncture of the concrete highway with the plank roadway of the bridge, it climbed the 13 inch curb on the west side of the roadway of the bridge. The car then drove upon the sidewalk at the west side of the roadway of the bridge for a distance of 97 feet, bumping against the handrail on the west side of the sidewalk as it proceeded. It then left the sidewalk proceeding in a northeasterly direction on a diagonal course across the roadway of the bridge a distance of 46 feet. The car then returned to the west side of the bridge and then again headed to the east side of the bridge. Upon reaching the east curb of the bridge at a point 362 feet north of the juncture of the concrete highway and the wooden roadway of the bridge, the automobile climbed the 12 or 13 inch curb adjoining the roadway, broke through the handrail and plunged to the railroad tracks below, coming to rest at a point estimated by one of plaintiffs' witnesses to be 20 to 30 feet east, and 40 feet north of the point where it left the bridge, and by another of plaintiffs' witnesses at a point a few feet east and twenty feet north of the point where it left the bridge. Both Shenk and Masimer were instantly killed by the force of the fall from the bridge.

Defendants maintain that the only requirement of the law in the construction and maintenance of bridges and their approaches is that they should be reasonably safe for the ordinary needs of travel, and insist that there was no negligence on their part. They declare that failure to give warning of an existing condition does not constitute negligence where plaintiffs' intes-

tates had full knowledge of such condition. Plaintiffs answer defendants' contentions by asserting that the evidence shows that defendants were guilty of negligence in the maintenance of the roadway, and support their contention by calling our attention to certain phases of the testimony. Edward H. Baily testified that the signs along Mannheim Road designate the speed at 45 miles per hour. E. H. Martin, a police officer who arrived on the scene of the accident shortly after the occurrence, testified: "I believe there had been about five accidents, four accidents prior to this particular one on Tuesday. . . . When it was wet the plank pavement was slippery. I observed that pavement in driving over it in an automobile. When it was wet I observed it was slippery due to the fact that several times when I drove over it with my squad car and in my own automobile I had experience myself in skidding on the bridge." Helen Gronewald testified: "I had an experience there on August 19, 1937. At that time I was in Mrs. Suter's car. She is a friend of mine. She is a school teacher. On this day it was raining. We were going home from Mattoon, Illinois. We were going north on Mannheim Road. . . . Well, we started up the bridge and the car skidded from one side to the other and she was a very slow driver. Then it went over the railing on the right side and knocked those iron bars, or something, I don't know what they are, knocked them off and she straightened the car, and the tire went underneath the bridge on a beam and one of the iron bars got caught on the fender, and that is what held the car up, and she turned off the ignition and pulled that thing on one side, whatever it is, and she jumped out of the car and pulled me out. . . . As our car went up the viaduct it was going about 20 miles an hour at the time it went into this skid. When it skidded it just seemed to go from side to side. You couldn't straighten it at all. It just kept hitting from one side to the other, just

going back and forth like this. [Illustrating] When I say it went from side to side, I mean that the car moved sidewise, it just skidded on the side this way and then it would skid this way.'' Martin Majewski, a police officer who arrived on the scene shortly after the accident, testified: ''The surface of the planks was very smooth. They were very slippery, almost white, worn out from tires. These planks were always being replaced as they were worn down, and were in the same condition, very slick. I had ridden over these planks when they were wet and in a rainstorm. Sometimes five or six and seven times a night. We would always take it awfully easy across there. Sometimes the State would throw cinders on there when it was slippery, but at times before they would get there it was very slippery.'' Mildred Krueger testified that she had occasion to ride over the viaduct many times in 1937 when it was raining. She testified: ''The planking on the south approach was very slippery. It had rained all night and the surface of the viaduct was very damp and wet. It was very slippery. About two or three months before I know of another car that went through there at the same place. I was there and saw it.'' Marie Klemmer testified: ''When we went over these planks we skidded. Our car was not going very fast when we skidded. My friend, Mrs. Conker, was driving the car. This took place about a year before this other accident. I don't know how many times that happened to me, but two times I know. The other time was quite a while before.'' Henry Noble testified: ''I traveled over that road on June 16, 1937, going north. I had an accident on the south approach of the viaduct going north. I skidded from the right lane, the northbound lane, and came to a stop in the left or southbound lane and had a head-on collision with the car coming south in that lane. To the best of my memory I was driving about 22 or 23 miles an hour when I skidded. I have never been sure why I

skidded. My car seemed to simply jump sideways from right to left and it wound up on the southbound lane. It was not as much of a forward skid as it was a sidewise skid.'' Edward H. Baily was driving an automobile behind that occupied by Shenk and Masimer. The automobile occupied by Shenk and Masimer passed that occupied by Baily a short distance south of the bridge at a speed of about 45 miles an hour. Baily testified that the automobile hit the west curb of the bridge, crossed over to the east curb, crossed back to the west curb again, crossed to the east curb to the point where it finally passed over the east curb and plunged through the railing out into the railroad yard. Defendants point out that although Baily drove over the bridge behind Shenk and Masimer within a matter of seconds after they had their accident, he did not skid on the bridge when he went over it. Defendants also call attention to the fact that E. H. Martin, called by plaintiffs, testified that he had served on the police force of the Village for four years; that he had owned a truck and automobiles before going on the police force; that he had been driving automobiles for about ten years prior to the time of the accident; that while serving on the police force and carrying on his own business, Martin had occasion to drive over the bridge many times; that while he stated he had skidded on the south approach of the viaduct, he did not testify to having had any accident of his own, and only testified to having been called as an officer on two accidents other than that involved in this case. Defendants also point out that Officer Majewski of the Sheriff's Highway Police testified that he drove over the bridge frequently; that he recalled the incident testified to by Helen Gronewald; that he was called to the accident which is the subject matter of this suit, but did not testify to having been called on any other occasion, and that he personally had never had an accident on

the viaduct.  Defendants also call attention to the fact that Mildred Krueger testified that she drove over the bridge frequently in 1937; that she knew of the incident testified to by Helen Gronewald and of the accident involved in the case at bar, but stated that in all the years she had been driving an automobile, she had never had an accident on the viaduct herself.  She had always lived in Franklin Park, just a block east of the viaduct along the railroad track, and had been driving for 15 or 18 years, and had been over the bridge many times.  Defendants call attention to the fact that Marie Klemmer testified that she had lived in Franklin Park for over 40 years; that the bridge was slippery when wet, but that she did not testify to having been in any accident on the viaduct herself.  Henry Noble testified that he had skidded in ascending the south approach of the viaduct.  Thomas H. Strate, called by defendants, testified that he was division engineer for the railroad company; that he had worked for the railroad for 39 years; that the viaduct was constructed substantially in accordance with the terms of the contract ordinance; and that the entire south approach to the viaduct was renewed in January 1937.  The photographs introuced by defendants, taken the day following the accident, showed clearly that the bridge floor was smooth, and contained no irregularities, bumps or depressions.  Defendants point out that plaintiffs produced seven witnesses to prove the allegations of their complaint, and observe that Baily, who was driving closely behind the car in which the decedents were riding, passed over the bridge without the slightest difficulty and without skidding, within a matter of seconds after the accident; that although this was a 40 foot wide state highway and an exceedingly busy one, only two persons were produced who had ever had accidents on the bridge, namely, Helen Gronewald and Henry Noble; that the two policemen, E. H. Martin and Martin Majewski, who, in the course of their du-

ties, must have gone over the bridge thousands of times, in all kinds of weather, never had an accident there, and that the witnesses, Mildred Krueger and Marie Klemmer, who lived in Franklin Park practically all of their lives and who drove over the bridge frequently, never had an accident on the bridge. It is undisputed that the railroad stood in the position of the Village of Franklin Park, and that there was a duty on the defendants to maintain the roadway in a reasonably safe condition. Plaintiffs argue that the condition that existed on the approach to the viaduct was extremely dangerous and hazardous, and was one that a motorist would not ordinarily expect, and that similar conditions are not to be found in this vicinity. They maintain that in the vicinity of Chicago the roads are either surfaced with concrete or nonskid asphaltum. Evidence of prior accidents occurring at the same place was admitted as tending to show that the common cause of such accidents was the dangerous and unsafe condition.

We agree with the defendants that the testimony fails to prove the allegations of the complaint. The defendants constructed and maintained the bridge in a condition reasonably safe for the ordinary needs of travel. It is true that the surface of the bridge, like the surface of a highway in general, is slippery when wet. That fact is not disputed. The sign at the bottom of the south approach to the bottom of the viaduct reading "Slippery When Wet" was erected and maintained by defendants and constituted a warning to all persons approaching the bridge that they must exercise care in driving upon it when wet. Such signs are frequently seen on State and county highways and on city boulevards. Their purpose is to warn people of a well-known fact, namely, that roadway surfaces are slippery when wet. This bridge was not slippery when dry. In *Evans v. Muscatine Bridge Corp.*, 228 Iowa 811, 293 N. W. 470, action was brought to recover

damages for injuries sustained when plaintiff's car skidded when descending defendant's bridge. A judgment rendered for the plaintiff was reversed. The evidence showed that the bridge roadway was 17 feet wide, descended at a 4.7 per cent grade and had an 8 foot curb on either side. After stating the rule that a bridge company is answerable in damages only for failure to exercise ordinary care, and that the bridge must be kept in a reasonably safe condition for travel, the court said at pages 473, 474:

"The substance of plaintiff's evidence is that the roadway was slippery because it was wet. Plaintiff does not claim the surface was slippery because it was oily, that is, the alleged dangerous defect is that the bridge floor was wet. The uncontroverted evidence shows that the roadway was not oily, that wet asphalt plank is less slippery than wet asphalt because of the felt used in its composition and that an asphalt surface is less slippery than concrete pavement. So far as shown by the evidence, the roadway was as safe to travel on as an asphalt or cement highway. The roadway was not slippery when dry and plaintiff was aware of the only condition that made it dangerous, that is, she knew it was wet. It was her duty to drive her car with the care commensurate with the inherent danger of a wet, hard-surfaced road and this, as hereinafter stated, she failed to do. The evidence discloses no defects in the construction or maintenance of the roadway and on this record we are compelled to hold the defendant performed its duty to keep the bridge in a reasonably safe condition for travel. Under the most favorable view of the evidence rule there was not sufficient evidence to warrant the submission of negligence of the defendant to the jury and the case must be reversed." In our opinion, the reasoning in the latter case is applicable to the factual situation before us. There is no contention on the part of plaintiffs that defendants were guilty of any negligence in the

construction and maintenance of the guard rails along the sides of the roadway.

Finally, defendants argue that plaintiffs' intestates were guilty of such contributory negligence as precludes any recovery. Defendants point out that these men, knowing that it had been raining steadily for a long period of time, approached the viaduct from the south; that the automobile first passed a "Slow" sign posted on the east side of Mannheim Road at a point 1100 feet south of the plank roadway; that they passed a "Narrow Pavement" sign at a point 894 feet south of the plank roadway; that they observed that the concrete pavement began to narrow from a width of 40 feet to a width of 20 feet at about 695 feet south of the plank roadway; that they passed the base of the bridge on which there was a "Slippery When Wet" sign; and argue that all of these signs should have given ample notice and warning to the occupants of the automobile that they were approaching a place where diligence should be exercised to avoid injury to their persons; that if they were in the exercise of ordinary care they should have observed the fact that the concrete road was narrowing to enter upon the bridge, and should have observed that the bridge was narrower than the concrete highway, that the flooring of the bridge was built of wood, and should have known by the common observation of reasonable persons that the wooden flooring of the bridge would be slippery because of the rainy weather. Notwithstanding the warning signs and the weather conditions the automobile was being driven at a speed of 45 miles an hour when it passed the witness Baily a short distance south of the bridge. We agree with the contention of defendants that the proximate cause of the accident was the negligence of the men driving and riding in the automobile. We find as a matter of law that plaintiffs failed in their attempt to prove that defendants were guilty of negligence, and also failed to prove

that Roy L. Shenk and William C. Masimer were in the exercise of due care and caution for their own safety.

Because of the views expressed, the judgment of the circuit court of Cook county is reversed and the cause remanded with directions to enter judgment notwithstanding the verdict for defendants and against plaintiffs.

*Reversed and remanded with directions.*

HEBEL and KILEY, JJ., concur.